Next case on the calendar is Hardy v. Pepsi-Cola Bottling Company.  Mr. Hardy? How you doing? And you reserve three minutes rebuttal. Yes. I'm asking for the decision be overturned because of court errors and misconduct, fraudulent oppression on the arbitration decision by my termination. Okay, my first argument is company policies with attendance through a collective bargaining agreement, and the correct disciplinary are first steps, counsel by supervision, documentation not required with others, which is better known as a verbal. Second step, a written reprimander, which could be placed in employment file. Third step, a final written warning placed in employee file. The fourth step, discharge and I guess, put on brunt to arbitration. The company started off with a written one, which was totally illegal. And which is that it's on this exhibit page on three. Okay. Sorry. Only immediate reason that you can dismiss somebody for, which is case law on Western Sugar Corporate against Teamster Union Local 455, which is Article 31. It is employee discharged for serious offenses, including dishonesty or drunkenness, drinking on duty, or during the time of employment. Participate in unlawful or unauthorized strike against employee recklessness, resulting in serious accident, which could be considered horseplay. While on duty, fighting on premises, gross disobedience, or company order willful, or neglect, or willful carefulness. So that's only immediate dismiss, but I was dismissed on, without just cause. But isn't, isn't that exactly what the arbitrator said? If I understand you correctly, the arbitrator said that the, any violations that you may have had in terms of lateness or, or absence were not sufficient reason for termination. Okay. Am I right about that? I thought he, I thought the arbitrator's ruling was that yes, you had violated the attendance policy, but that wasn't a, a ground for firing. Okay, but they still used the attendance against me, even though they said it was a warning one. They still used the attendance against me with the workman count fraud. Now my second argument is workman count fraud is something that's gotta be, when I was on count, when I made the posting, workman count fraud is something that's gotta be dealt with the workman count board, because I'm a protected injured worker. The arbitrator basically unfairly arbitrated on something that he can only arbitrate with the company policies. By the posting was done, which is insubmissive, I was at home on comp under a prescription medication. Whatever, under the care of Dr. Corona, which I have documentation showing that I was at the hospital. But the arbitrator made a decision that he's not allowed, he was supposed to properly submit it to the workman comp board, judges for investigation. But he terminated me illegally on something that, how can you terminate me for something I'm at home? Only would terminate for me something that's like company policies, I'm at the company, I wasn't at the company. And I had documentation that- So your argument is that the Facebook posting was not a basis that the arbitrator could use to terminate you, having concluded that being late wasn't enough. No, or the workman count fraud, because what happened is on my article 14 says, no one other for dishonesty or drunkenness could be terminated unless during the time of employment. That's what their article, which is in the thing. So if I'm not at work, you can't terminate me for being drunk at home or dishonest at home. So that's the reason why I'm posting. You saved time for rebuttal, right? Yes. So you'll have three minutes for rebuttal, and we'll hear from the company. Good afternoon, your honors. May it please the court, Anthony Mangione on behalf of the appellee. The district court correctly granted summary judgment in this case. There were no genuine issues of material fact, and judgment in appellee's favor was required as a matter of law. To point out in response to appellant's arguments, this is not an appeal of the arbitrator's decision. This is a Title VII and ADA discrimination case. It's also not a case about appellant's workers' compensation benefits. Appellant has a workers' compensation, filed a section 120 under the New York State Workers' Compensation Law claim and a claim for benefits. And those claims are not part of this lawsuit. This case really is about whether the company's decision to recommend arbitration and then later to amend the basis for arbitration based on appellant's conduct were discriminatory decisions under the Americans with Disabilities Act and Title VII. They were not discriminatory decisions for several reasons. The first is that appellant is not a qualified individual with a disability as that term is contemplated by the ADA. The second is that even if appellant was disabled under the ADA, the undisputed facts are such that there was no adverse employment action taken against him on the basis of that disability and that the appellee had legitimate business reasons for all of the actions taken with respect to the appellant's employment. There's also no record evidence of any discriminatory intent. There's no evidence of discriminatory actions. There's no record evidence of retaliation or any discrimination of any kind. It's important to note that the appellant has had the case at the CBA grievance arbitration. There's been a workers' compensation proceedings. He's brought his case to the National Labor Relations Board, several administrative agencies in this court. There's been no finding of any wrongdoing by the company. The decision was upheld by an independent arbitrator. The termination decision, and during the time of that decision, appellant was represented by competent counsel. The other arguments raised in appellant's brief are without merit. Just to point out that the appointment of pro bono counsel is a discretionary determination. There's been no allegation or demonstration that that discretion was abused. And we would ask that any extraneous material outside the record not be considered, unless there are questions from the panel. There was a statement about when he returned after his shoulder injury, he was assigned to the overnight shift when he came back, and an allegation of discriminatory treatment on the ground that Latino and Caucasian workers were assigned to the daytime shift. Correct, those were two allegations, I'll take them in turn. When the appellant came back, there is no light duty type position in the, we'll call it in the bottling facility. But it's usually that the night shift is less onerous in terms of just volume and work. So the record, the undisputed facts in the record show that the supervisors generally try to reacclimate people to the workforce. By assigning them to the night shift until they're back. That was not a discriminatory act, that was an act to benefit the appellant and get him reacclimated to the rigors of the job. And to point out that the appellant passed a functional capacity examination, testified that he wasn't disabled. As for your Honor's question regarding the makeup of the workforce, again, the evidence in the record shows a very diverse workforce. And that the disciplinary decisions based on attendance, which was the original basis for appellant's discipline, the company has a large workforce. And every so often, supervisors make, okay, we're going to do a sweep and check the last several months of attendance and see what it shakes out. There were 15 people selected for discipline over the period in question that led to the arbitration for of those 15, I believe that six were African-American, six were Hispanic, and three were Caucasian, which is roughly equivalent to the statistical breakdown of appellee's workforce, which is on the EEO-1, which is at least part of the record below. If there are no other questions, thank you. All right, how you doing? Once again, Your Honor, there was an adverse employment action because when I went to the Human Rights on July 10th, 2013, and signed a harassment and discrimination charge. They told me that I didn't have one at the time, but if the company did demote me or terminated me a later date, which is 180 days, six months without just cause, that would create an adverse employment action. Now, the company did say that they tried to terminate me for attendance, but the arbitrator said attendance alone wouldn't fire me. because I even have evidence that the attendance that they put against me in 2011 was when I got hurt on September 25th and had got assaulted. The company said that I was just absent on October 14th. In reality, the disability letter shows that they paid me to September 26th to November 8th. So they incorrectly or fraudulently put derogatory attendance on me that was incorrect. So it was many things they'd done against me that hasn't been correct. And they was retaliatory even with the section 120 because it says if the section 120 basically explains if I basically attempt or file a workman comp claim, the company can't discriminate or retaliate against me. If the arbitrator believes that I was supposed to be forward to the proper people, I'm on comp, I'm an injured worker. The arbitrator could not touch that. And then final and binding could be overturned if it's fraudulent misconduct and oppression. So those are things that could be overturned regardless if it was brought up before. And another argument is that the judge, Caperoni, said that I wasn't indigent. You gave me hardship, you waived my court fees and showed that I was on the poverty level, which I was getting unemployment at 300. So I should have been getting pro bono service. She told me that I could get it, she'll review my case if I get to deposit a motive. I went to the discovery, I did a deposition. So I was supposed to be reviewed, but I was denied. So it's many issues that I'm bringing forward to you, like I'm a layman, but I know enough that I've done stuff that's done it incorrect, and this is on my name that I'm doing fraud. I got a payout from the workman comp board, which had 25% lost use. I had surgery on my shoulder July 20th, 2012. Dr. Glassman did it, which I had a rotated cup injury. I got a settlement award for $58,039.02, if you look in the paperwork. So company can't terminate me for being hurt, and I didn't avoid arbitration because I came, the doctor notes stated from August 20th, which is the 2013, I was back. Arbitration was to the 26th, and the reason why I was rescheduled, Mr. Green, the union father passed away, he had to go to Florida, it's no fault of my own. So these things should not stand, it should be overturned in that they do have merits and substance that my case should go further. Thank you. Thank you both. We have your briefs, and we will take the matter under submission.